408 P.2d 841

PETERMAN–DONNELLY ENGINEERS & CONTRACTORS CORPORATION, formerly P. G. & R. Engineering, Inc., an Arizona corporation, Appellant and Cross-Appellee,

v.

FIRST NATIONAL BANK OF ARIZONA, PHOENIX, Appellee and Cross-Appellant.*

No. 2 CA–CIV 82.

Court of Appeals of Arizona.

Dec. 17, 1965.

Rehearing Denied Jan. 12, 1966.

* This appeal was filed with the Arizona Supreme Court and assigned that court's No. 8167. The matter was referred to this court pursuant to A.R.S. § 12–120.-23.

**322**

Cox & Hedberg, by John C. Hedberg, Phoenix, for appellant and cross-appellee.

Rawlins, Ellis, Burrus & Kiewit, by William D. Baker, Phoenix, for appellee and cross-appellant.

MOLLOY, Judge.

This is an appeal and a cross-appeal from partial summary judgments granted below to both appellant and appellee, which determined lien priorities between the parties.

A parcel of land was donated to the Chamber of Commerce of Apache Junction, on which the Chamber undertook to construct a baseball park. The Chamber committed itself to an outside organization, the Houston Sports Association, to complete the park by February 1, 1962. To finance the project, the Chamber borrowed $10,000.00 from one L. D. Eyre, and secured the loan by a mortgage to Eyre.

Later, in an effort to forestall organizational delays, the Chamber caused The Lost Dutchman Baseball Association, Inc., to be created to construct and operate the baseball park. At the time the Association was incorporated, August 4, 1961, the Chamber decided to deed the parcel to the Association, and an appropriate deed was executed. The conveyance was not delivered however, or recorded, until October 3, 1961, at which time the Association borrowed $35,000.00 from the appellee, First National Bank of Arizona. Part of this money was used to satisfy the Eyre mortgage and the remainder was to be used to further the project.

Improvement of the parcel commenced before the Association was incorporated, and on September 18, 1961, before the conveyance to the Association was recorded, or the bank loan placed, the Association entered a contract with the appellant Peterman-Donnelly Engineers & Contractors Corporation for the construction of a major portion of the baseball park. The appellant commenced work shortly thereafter. Appellant worked on the project until about January 25, 1962, at which time it discontinued further services because of the failure of the Association to pay sums owed to it under this contract.

Appellant filed a notice and claim of lien, and subsequently prevailed in foreclosure proceedings. Execution was stayed pending determination of priorities between appellant and appellee. Both parties moved for summary judgment, and each motion was granted in part. We are concerned with an appeal and a cross-appeal from the judgment granted below as to priorities.

The cross-appeal will be considered first. Appellee-bank contends that appellant-contractor failed to perfect its lien against the Association and that the appellee, therefore, must be awarded priority over any claim of the appellant. Appellee grounds its argument on the requirements of A.R. S. § 33–993, and contends that the statute

was not followed in two respects: first, a copy of the notice and claim of lien was not served on the owner; and secondly, the notice and claim of lien did not contain a copy of the written contract between appellant and the Association.

The statute is as follows:

"In order to impress and secure the lien provided for in this article, every original contractor, within ninety days, and every other person claiming the benefits of this article, within sixty days after the completion of a building, structure or improvement, or any alteration or repair thereof, shall make duplicate copies of a notice and claim of lien and file one copy with the county recorder of the county in which the property or some part thereof is located, and within a reasonable time thereafter serve the remaining copy upon the owner of the building, structure or improvement, if he can be found within the county. The notice and claim of lien shall be made under oath by the claimant or some one with knowledge of the facts, and shall contain:

1. A description of the lands and improvements to be charged with a lien, sufficient for identification.

2. The name of the owner or reputed owner of the property concerned, if known, and the name of the person by whom the lienor was employed or to whom he furnished materials.

3. A statement of the terms, time given and conditions of the contract, if it is oral, or a copy of the contract, if written.

4. A statement of the lienor's demand, after deducting just credits and offsets." A.R.S. § 33–993.

The notice did not have attached thereto a copy of the construction contract. Service of the claim was attempted by serving a duplicate copy upon the law partner of the statutory agent of the Association, and the statutory agent subsequently executed a formal acknowledgment of service.

Concerning the contention that the notice and claim of lien did not contain a copy of the contract, the following language from that notice is revelant:

"3. * * * that on September 18, 1961 the Peterman-Donnelly Engineers & Contractors Corporation entered into a contract with The Lost Dutchman Baseball Association, Inc. which, together with change orders thereafter agreed upon, was for the construction of fences, batter's eye, bleachers, ramps, box seats, dugouts, dugout tunnel, backstop, press box and other miscellaneous improvements.

"4. * * * that the original contract was for a price of $19,800.00; in addition thereto, by change orders and additions agreed to by the parties, $12,-545.38 in other work has been performed."

Obviously the quoted portions of the notice do not strictly satisfy the statutory requirement of a " * * * copy of the contract, * * *" but it is equally evident that the principal terms of the agreement have been incorporated into the notice: the parties, the date, the purpose and the consideration. In addition, elements of subsequent oral agreements are included. What is lacking is a recital of the fine print terms of a standard form contract. The question is, does such an omission so avoid the statutory requirement as to negative the legislative intent? We think not.

The purpose of the requirements of A.R.S. § 33–993 is to give the property owner an opportunity to protect himself and time to investigate the claim and determine whether it is a proper charge, Leeson v. Bartol, 55 Ariz. 160, 99 P.2d 485 (1940), and the lien statutes, being remedial, are to be liberally construed. Ranch House Supply Corporation v. Van Slyke, 91 Ariz. 177, 370 P.2d 661 (1962); Kerr-McGee Oil Industries, Inc. v. McCray, 89 Ariz. 307, 361 P.2d 734 (1961). Substantial compliance not inconsistent with the legislative purpose is sufficient. Leeson v. Bartol, supra.

If we were to require more than substantial compliance, we would be inviting an absurdity. Construction contracts, typically, are lengthy documents. Specifications, plans and general conditions are usually incorporated and made a part of the contract. To require that an exact copy of such a contract be recorded and served would impose an unreasonable burden on those asserting lien claims, as well as on the county recorder, and would serve no useful purpose. Further, the parol evidence rule notwithstanding, few contracts for construction are unaffected by oral modifications. A strict reading of the statute, then, would omit these portions of the agreement between the parties. We hold that substantial compliance with the requirement that a " * * * copy of the contract * * *" be included in the notice is sufficient, and the facts of this case manifest such compliance.

■ Concerning service of the notice, it is uncontested that a copy of the notice was left with the law partner of the statutory agent named in the Association's articles of incorporation. Thereafter, counsel for appellant, fearing that such service would not satisfy the statutory requirement, obtained from the statutory agent an acknowledgment of receipt of service. Appellee maintains that the statute is still not satisfied, that service is incomplete, and that therefore the lien is not perfected. Again, we disagree. The appellee has shown no prejudice whatsoever from the alleged defect in service. Remembering that the owner has lodged no complaint, and recognizing that the service effected gave substantially the same actual notice as have afforded, we hold the service to be strict compliance with the statute would valid.

Both the appellee and the appellant attack the judgment of the lower court in its determination of priorities. By the terms of the summary judgment, appellee was given a first lien in the amount of $11,600.00, representing the amount required to satisfy the prior mortgage; appellant was determined to have a second lien for the amount due on the contract for improvements; and appellee was awarded a third lien for the remainder of the mortgage monies given at the time title was transferred to the Association.

Appellant contends that no part of the appellee-bank's mortgage is entitled to priority over the mechanic's lien arising from work and materials furnished by appellant. Appellee maintains, on the contrary, that not only part but all of its mortgage should enjoy priority over the appellant's claim.

A.R.S. § 33–981 provides:

"A. Every person who labors or furnishes materials, machinery, fixtures or tools in the construction, alteration or repair of any building, or other structure of improvement whatever, shall have a lien thereon for the work or labor done or materials, machinery, fixtures or tools furnished, whether the work was done or articles furnished at the instance of the owner of the building, structure or improvement, *or his agent*.

"B. Every contractor, sub-contractor, architect, builder *or other person* having charge or control of the construction, alteration or repair, either wholly or in part, of any building, structure or improvement, is the agent of the owner for the purposes of this article, and the owner shall be liable for the reasonable value of labor or materials furnished to his agent." (Emphasis added.)

Depositions submitted to the court in support of the motions for summary judgment reveal that the Apache Junction Chamber of Commerce, which had committed itself to develop a baseball park on the donated land, was organizationally "hamstrung," and that administrative delays threatened completion of the project in time to honor a commitment. The Chamber of Commerce therefore decided to organize a separate corporation to handle the matter. The corporation was formed, and its officers were all Chamber members.

It is beyond question that a corporation may be the agent of another corporation. Restatement (Second), Agency §§ 1 and 14M. The present facts clearly reveal that the sole motive behind the creation of The Lost Dutchman Baseball Association was the desire that the purposes and commitments of the Chamber of Commerce be more expeditiously effected. The trial court was therefore justified in concluding that the statute (A.R.S. § 33–981) was satisfied, and that appellant's lien for labor and materials attached when the work was commenced and the materials furnished. Wylie v. Douglas Lumber Co., 39 Ariz. 511, 8 P.2d 256 (1932); 83 A.L.R. 918.

Priorities among liens are controlled in part by A.R.S. § 33–992:

"The liens provided for in this article, unless otherwise specifically provided, are preferred to all liens, *mortgages* or other encumbrances upon the property *attaching subsequent* to the time the labor was commenced or the materials commenced to be furnished. The liens provided for in this article are also preferred to all liens, *mortgages* and other encumbrances of which the lienholder had no actual or constructive notice at the time he commenced labor or commenced to furnish materials." (Emphasis added.)

The mortgage here in question, given by the Association to the appellee-bank, was executed subsequent to the atttachment of appellant's lien, so that the statute is applicable, unless some other factor affords the appellee a priority, in whole or in part.

Appellee relies heavily on the language of the trial court in granting a first lien to the extent of $11,600.00 as a "purchase money mortgagee." We believe that it is unnecessary to determine whether the mortgage was for "purchase money" or whether a "purchase money mortgage" enjoys priority over a mechanic's lien previously attaching in spite of A.R.S. § 33–992, because, in our opinion, the determination of the trial court was a fitting application of the doctrine of subrogation.

The Arizona Supreme Court, in Mosher v. Conway, 45 Ariz. 463, 46 P.2d 110, made the following remarks on subrogation:

"Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. It is a creature of equity, and was adopted from the Roman and not from the common law. Its purpose is the prevention of injustice and is the mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it. It rests upon the principle that substantial justice should be attained, regardless of form. While the nature and grounds of subrogation are very clear, the difficulty arises in its application to the innumerable complications of business, and no general rule can be stated which will afford a test in all cases for its application. Whether it is applicable or not depends upon the particular facts and circumstances of each case as it arises. This remedy has been applied much more extensively in American than in English jurisprudence, and the modern tendency is to extend its use rather than to restrict it."

Although the Mosher case indicates that an ad hoc approach is required, the following statement in 83 C.J.S. Subrogation § 38, p. 650, approximates a generality:

"Thus, a third person, having agreed to advance money to discharge an encumbrance on property of another, where he is not a volunteer, and where payment is made under an agreement that he will be substituted in place of the holder of the encumbrance, is entitled to subrogation, *whether such agreement is express or whether such agreement is implied.*" (Emphasis added.)

The evidence supporting the motions revealed that at the time the property in question was conveyed to the Association from the Chamber, it was understood that a part of the loan forwarded by the appellee to the Association was to be used to satisfy the debt to Eyre. It is likewise evident from the depositions that appellee-bank regarded itself as stepping into the shoes of Eyre. However, no formal assignment of the prior mortgage to appellee was executed, but it is implicit that the parties intended the appellee to have the security attached to the prior mortgage. Where such an understanding, express or implied, exists, the law generally allows a subsequent mortgagee to be subrogated to the rights of a prior mortgagee where the subsequent mortgagee has advanced money to the debtor to satisfy the prior mortgage, and where the subsequent mortgagee is not a mere volunteer. 83 C.J.S. Subrogation § 39, pp. 656-657.

A leading case on subrogation rights, reviewing many other decisions, is Martin v. Hickenlooper, 90 Utah 150, 59 P.2d 1139, 107 A.L.R. 762 (1936), in which the following language is approvingly quoted from Emmert v. Thompson, 49 Minn. 386, 52 N.W. 31 (1892):

> "The better opinion now is that one who loans his money upon real estate security for the express purpose of taking up and discharging liens or encumbrances on the same property has thus paid the debt at the instance, request, and solicitation of the debtor, expecting and believing, in good faith, that his security will, of record, be substituted, in fact, in place of that which he discharges, is neither a volunteer, stranger, nor intermeddler, * * *."

Subrogation is, however, a doctrine of equity, and its application may be defeated by intervening rights which would be prejudiced by the substitution. In the instant case, however, the rights of appellant are unaffected by the substitution of appellee for Eyre. Appellant remains with a lien prior to all claims save that for a mortgage given before appellant commenced any work on the project. Tracy-Collins Trust Company v. Goeltz, 5 Utah 2d 350, 301 P.2d 1086. (1956). Equity requires that the appellee be afforded that security for which he obviously bargained.

We therefore hold that appellee was subrogated to the claim of Eyre for $11,600.00 and that the priorities ordered by the trial court are consistent with equity and law and must be affirmed.

Judgment affirmed.

KRUCKER, C. J., and HATHAWAY, J., concurring.