IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

BAC HOME LOANS SERVICING, LP,        )
fka Countrywide Home Loans, Inc.,    )      2 CA-CV 2011-0129
                                     )      DEPARTMENT B
                  Plaintiff/Appellee,)
                                     )      O P I N I O N
            v.                       )
                                     )
SEMPER INVESTMENTS L.L.C., an        )
Arizona limited liability company,   )
                                     )
                  Defendant/Appellant.)
                                     )

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20095228

Honorable Paul E. Tang, Judge

AFFIRMED

Gust Rosenfeld, P.L.C.
  By Mark L. Collins and Robert M. Savage                          Tucson
                                            Attorneys for Plaintiff/Appellee

Gabroy, Rollman & Bossé, P.C.
  By Ronald M. Lehman                                              Tucson
                                           Attorneys for Defendant/Appellant

E S P I N O S A, Judge.

¶1          In this equitable subrogation action, Semper Investments, L.L.C. (Semper)

appeals from the trial court's grant of summary judgment in favor of BAC Home Loans

Servicing, LP, formerly known as Countrywide Home Loans, Inc. (BAC),[1] and the court's minute entry denying Semper's motion for a new trial. Semper contends the court erred in applying the doctrine of equitable subrogation to place the subsequently recorded BAC loan in primary lien position, thereby prejudicing Semper. For the reasons stated below, the grant of summary judgment in favor of BAC is affirmed.

**Factual Background and Procedural History**

¶2 We view the evidence in the light most favorable to the party opposing the motion for summary judgment and construe all inferences in favor of that party. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 201 Ariz. 474, ¶ 13, 38 P.3d 12, 20 (2002). In August 2004, Carmine Russo purchased property in Pima County with a secured loan for $716,000 from First Magnus Financial Corp. The loan was thereafter assigned to Chevy Chase Bank. In November 2005, Russo obtained a $400,000 home equity line of credit from First Horizon Home Loan Corp., secured by deed of trust. The following month, he executed

---

[1]Although Semper's briefs refer to the appellee under the name of its predecessor Mortgage Electronic Registration Systems, Inc. (MERS), we identify the appellee and its predecessors in interest as "BAC," the party awarded judgment below. The record reflects some confusion as to the proper parties to this lawsuit. MERS's motion to substitute "BAC Home Loans" as party plaintiff was granted and, after the trial court granted summary judgment in favor of BAC Home Loans, the party plaintiff was corrected to reflect "BAC Home Loans Servicing, LP." *See* Ariz. R. Civ. P. 17(a), 25(d). On appeal, we denied Semper's motion to substitute Curia L.L.C., assignee of Semper's interest in the subject property, as party appellant in its place, *see* Ariz. R. Civ. App. P. 27(b), and Semper's motion to stay this appeal and revest jurisdiction in the trial court to modify the judgment to substitute Bank of New York Mellon as creditor in place of MERS, *see* Ariz. R. Civ. P. 60(c).

2

a $700,000 revolving loan agreement in favor of Michael Figueroa, trustee of D'Esprit, Inc. Profit Sharing Plan, and recorded a deed of trust.

¶3        In August 2006, Russo borrowed one million dollars from First Magnus Financial Corp., evidenced by a promissory note, for which Mortgage Electronic Registration Systems, Inc. (MERS) was the beneficiary (BAC loan). At that time, First Magnus was a member of MERS. To complete the transaction, $727,791 was applied to the August 2004 First Magnus loan and $272,208, plus another $132,375 from Russo, was paid to satisfy the 2005 First Horizon loan. First Magnus did not notify D'Esprit of the new loan. The beneficial interest in the 2006 note and deed of trust was transferred to BAC.[2] After the First Magnus loan was recorded, D'Esprit released the $350,000 remaining on its revolving loan agreement. The D'Esprit deed later was re-recorded to attach the previously omitted legal description and was assigned to Semper (Semper loan). Russo subsequently defaulted, Semper initiated a trustee's sale, and BAC brought this action against Semper for an injunction to halt the trustee's sale and for a determination that its loan held a priority position.

¶4        BAC moved for summary judgment, contending its loan had priority under the doctrine of equitable subrogation. Semper filed a cross-motion for partial summary

---

[2]In September 2006, First Magnus electronically transferred its interest in the 2006 note and deed of trust to BAC Home Loans Servicing L.P., formerly known as Countrywide Home Loans. On October 1, 2009, BAC Home Loans, a member of MERS, assigned its interest in the 2006 deed to BAC Home Loans Servicing, L.P. Semper initially argued that MERS and related entities were not beneficiaries of the note and lacked standing to pursue this claim, but did not renew that argument in its amended opening brief; therefore, we do not address the issue on appeal.

judgment arguing its lien had priority for the total loan amount of $700,000 or, alternatively, at minimum as to the $350,000 dispersed following the BAC loan.[3]  In granting BAC's motion for summary judgment and denying Semper's cross-motion, the trial court rejected Semper's argument that it would be prejudiced if subrogation were applied, finding that subrogation actually improved Semper's position by raising the Semper lien from third to second priority, and reducing the total debt burden on the property.  Citing *Lamb Excavation, Inc. v. Chase Manhattan Mortgage. Corp.*, 208 Ariz. 478, ¶¶ 10-11, 95 P.3d 542, 545 (App. 2004), the court also found BAC was not required to have notified D'Esprit of its loan in order to be subrogated.  This appeal followed.  We have jurisdiction pursuant to A.R.S. § 12-120.21(A)(1).[4]

**Discussion**

¶5        We review a ruling on a motion for summary judgment de novo to determine whether any genuine issues of material facts exist and whether the trial court properly applied the law.  *Sourcecorp, Inc. v. Norcutt*, 227 Ariz. 463, ¶ 11, 258 P.3d 281, 284 (App. 2011), *review granted* Nov. 29, 2011.  The determination of equitable subrogation is a question of law, which we review de novo.  *Lamb Excavation*, 208 Ariz. 478, ¶ 5, 95 P.3d at 544.  In the absence of a transcript of the hearing on the motions, we

[3]The parties stipulated to mutual preliminary injunctions against their respective trustees' sales, and BAC withdrew Count One, Invalid Deed of Trust, leaving only the issue of equitable subrogation on appeal.  *See Harris v. Cochise Health Sys.*, 215 Ariz. 344, ¶ 8, 160 P.3d 223, 226 (App. 2007) (appellate jurisdiction limited to final judgments disposing of all claims and parties).

[4]We lack jurisdiction to consider Semper's appeal from the unsigned May 31, 2011, minute entry denying a new trial and do not address that ruling.  *See Hall Family Props., Ltd. v. Gosnell Dev. Corp.*, 185 Ariz. 382, 387, 916 P.2d 1098, 1103 (App. 1995).

4

presume the record supports the trial court's rulings. *Evans v. Dise*, 15 Ariz. App. 101, 103 & n.6, 486 P.2d 213, 215 & n.6 (1971) (absent transcript, appeals court unable to evaluate theories advanced by parties alleging genuine issue of facts for trial).

¶6 In general, previously recorded liens have priority over subsequent ones. *Lamb Excavation*, 208 Ariz. 478, ¶ 6, 95 P.3d at 544. But the doctrine of equitable subrogation allows a subsequent lender who applies funds to a primary and superior encumbrance to be substituted in the priority position of the primary lienholder, despite the recording of an intervening lien. *Id.* This is "to avoid a person's receiving an unearned windfall at the expense of another." Restatement (Third) of Property (Mortgages) § 7.6 cmt. a (1997). For equitable subrogation to apply, there must exist an agreement to subrogate, express or implied; the subsequent lender must not be a volunteer; the lender must have a reasonable expectation of receiving a security interest; and intervening claimants must suffer no prejudice. *Lamb Excavation*, 208 Ariz. 478, ¶¶ 12, 13, 95 P.3d at 545-46. Notice of subrogation to intervening claimants is not required. *Id.* ¶ 20.

¶7 Semper asserts the trial court erred in granting summary judgment on the issue of equitable subrogation because it would suffer substantial prejudice if subrogation were applied, citing *Lamb Excavation* for the proposition that "when a lender . . . demands a higher interest rate than that under the prior loan, the intervening lienholders may be jeopardized." 208 Ariz. 478, ¶ 19, 95 P.3d at 547. Semper argues the terms of BAC's loan differ from the subrogated August 2004 First Magnus loan and 2005 First Horizon loan, pointing out the BAC loan has a fixed interest rate, while the subrogated

loans had variable rates, and the BAC loan imposes higher late charges[5] and calls for larger monthly payments—therefore increasing the probability of Russo's default. Semper further asserts that whether it would be prejudiced by the new loan terms is a genuine issue of material fact precluding the entry of summary judgment.

**¶8** BAC, also citing *Lamb Excavation*, argues the trial court correctly applied equitable subrogation, points out Semper did not below and cannot on appeal refute that its elements are met by the undisputed facts, and contends that without subrogation Semper would receive a windfall. 208 Ariz. 478, ¶ 19, 95 P.3d at 547. Additionally, citing Restatement § 7.3, BAC maintains that Semper had accepted the risk of higher interest rates because the subrogated loans had variable interest rates that would have permitted rate increases up to 19.9 percent and twenty-one percent, far in excess of the 7.25 percent fixed rate of the BAC loan.[6]

**¶9** Disparate interest rates do not alone equate to prejudice upon intervening lienholders. *See Lamb Excavation*, 208 Ariz. 478, ¶ 19, 95 P.3d at 547. When the interest rate of a new loan materially differs from a subrogated loan, so that the higher

---

[5]Semper cites no authority for the proposition that imposition of increased late penalties in a subrogating loan prejudices intervening lienholders. *See* Ariz. R. Civ. App. P. 13(a)(6). And, because Semper did not raise this argument below, it is waived in any event. *Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, ¶ 17, 158 P.3d 232, 238-39 (App. 2007).

[6]BAC asserts Semper's disparate-interest-rate argument was "little more than an afterthought during the summary judgment proceedings." Although the judgment lacks reference to Semper's interest-rate comparison, and we do not have the benefit of reviewing the hearing transcript, Semper did include the theory in its summary judgment pleadings which were considered by the trial court. *Cf. A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 222 Ariz. 515, ¶ 24, 217 P.3d 1220, 1232 (App. 2009) (inference some evidence presented where implied in finding by trier of fact).

6

interest rate jeopardizes the intervening interest holder's position by increasing the balance of the mortgage at a later foreclosure date, "[s]ubrogation should be granted only to the extent of the debt balance that would have existed if the interest rate had been unchanged." Restatement § 7.6 cmt. e; *see Lamb Excavation*, 208 Ariz. 478, ¶ 19, 95 P.3d at 547. But where, as here, the original loan provided for variable interest "and the interest on the refinancing loan falls within the parameters thus established," it is not necessary to apply the original interest rate to a subrogating loan. Restatement § 7.6 cmt. e; *cf.* Restatement § 7.3 cmt. b (under analogous principles of replacement and modification of mortgages, finding of material prejudice justified only where intervening lienholder placed in "substantially weaker position"). Here, the original loans permitted interest rates more than double that of the BAC loan, so the certainty of a fixed-rate mortgage within the range of those variable rates could not materially prejudice Semper. Contrary to Semper's contention, prejudice is determined by evaluating the risk undertaken by the intervening lienholder at the time it made the loan.[7]  *Cf. Lamb*

---

[7]In its opening brief, Semper asked this court to take judicial notice of published interest rates to extrapolate the current rates of the subrogated loans and determine it was prejudiced by subrogation of the higher-interest rate BAC loan. During oral argument, however, Semper acknowledged that when D'Esprit made its revolving loan agreement with Russo, it assumed the risk that the variable rates on the original loans might increase up to 19.9 percent and twenty-one percent. Semper nevertheless argues prejudice should be evaluated by comparing the BAC loan rate to theoretical interest rates that would have applied to the original loans when Russo defaulted in 2008. The appropriate rates, however, are the historical ones in November 2005 when D'Esprit entered into its agreement with Russo. At that time, the first and second mortgages would have reflected rates around 6.75 percent and 6.8 percent, respectively. Therefore, at the time D'Esprit made the loan, it was aware it took its interest behind two loans with those variable rates and it accepted the risk that the priority loan rates might continue to rise; indeed, it was

*Excavation*, 208 Ariz. 478, ¶ 18, 95 P.3d at 547 (when intervening contractor agreed to perform work on property, it understood it would not hold priority lien position). Furthermore, to promote Semper to senior lien status merely as a result of the differing loan terms which caused it no material prejudice would confer an undeserved windfall. *See* Restatement § 7.6 cmt. a; *see also Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, ¶ 15, 258 P.3d 200, 205 (App. 2011) (Arizona courts generally follow Restatement in absence of controlling authority).

**¶10**          Semper nevertheless contends, without citation to authority, that it is prejudiced by the subrogation because D'Esprit would not have made subsequent advances on its revolving loan had it known of the higher-interest BAC loan.[8]  BAC counters that Semper had no ability under its revolving loan agreement to refuse to advance the full secured amount of debt.

**¶11**          Semper's argument that its predecessor would have behaved differently had notice been provided is immaterial, because notice to intervening lienholders is "not an

aware rates had been rising for over a year.  In this context, the trial court could implicitly find the subrogation of a fixed-rate loan at 7.25 percent was not materially prejudicial.

[8]Semper also asserts the judgment contains a "fundamental error" demonstrating the trial court did not understand its argument that additional payouts would not have been made under the revolving loan had D'Esprit known of the BAC loan:  "Semper unconvincingly contends it was prejudiced as it would not have extended to Russo a favorable interest rate had it been aware of the [BAC] loan."  Although the trial court's statement appears incongruous, we have no way to determine what arguments Semper made during the hearing, and we presume the missing portion of the record supports the trial court's judgment. *See Evans*, 15 Ariz. App. at 103 & n.6, 486 P.2d at 215 & n.6.  In any event, having reviewed the entire record de novo, we do not find the error material to our resolution of this appeal.  Moreover, we will affirm a summary judgment if correct for any reason. *United Ins. Co. v. Lutz*, 227 Ariz. 411, ¶ 8, 258 P.3d 229, 231 (App. 2011).

8

element of equitable subrogation under Arizona law." *Lamb Excavation*, 208 Ariz. 478, ¶ 20, 95 P.3d at 548. Rather, the inquiry rests on actual prejudice to an intervening lienholder. *See* Restatement § 7.6 cmt. f (intervening lienholders prejudiced when they acquire junior interest, incorrectly believing they hold first mortgage, and belief caused by subrogee's delay in making demand for subrogation). Additionally, the D'Esprit deed of trust originally encumbered the property in the amount of $700,000, behind more than one million dollars of debt at variable rates up to 19.9 percent and twenty-one percent, and D'Esprit agreed to lend up to $700,000 at specified terms without qualification. Thus, Semper's predecessor was not in a less advantageous position than it believed itself to be when it made advances of $350,000 following the BAC loan, and was not prejudiced by such lack of notice.

¶12 Finally, and again without citation to authority, Semper claims prejudice because $100,000 of the 2005 First Horizon loan was funded "in essence" by Semper. But it is unclear how Russo's discretionary use of funds paid under a prior loan agreement would prejudice Semper. As stated above, BAC's priority under equitable subrogation extends only insofar as BAC supplied funds to satisfy the priority liens, and funds paid toward those liens from other sources cannot be credited to BAC. *See Peterman-Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank of Ariz., Phx.*, 2 Ariz. App. 321, 324, 326, 408 P.2d 841, 844, 846 (1965) (lender subrogated only to extent loan satisfied priority loan, even though more borrowed); *In re Mortgs. Ltd.*, 444 B.R. 585, 593-94, 598 (Bankr. D. Ariz. 2011) (equitable subrogation limited to portion of loan actually used to discharge priority debt). Furthermore, Semper would receive a

9

windfall if, by funding $100,000 to pay down priority loans, it could maintain priority over BAC's million-dollar loan that funded the balance. *See Lamb Excavation*, 208 Ariz. 478, ¶ 6, 95 P.3d at 544; *Rowley Plastering Co. v. Marvin Gardens Dev. Corp.*, 180 Ariz. 212, 214, 883 P.2d 449, 451 (App. 1994) (equitable subrogation intended "to compel the ultimate payment of a debt by one who in justice and good conscience ought to pay it" and to prevent unjust enrichment at expense of another).

### Disposition

**¶13** Semper has not identified any genuine issue of material fact that would preclude summary judgment, and asserts only an unsupported legal conclusion that it has been prejudiced by the subrogation. Accordingly, the trial court's ruling granting summary judgment in favor of BAC and denying Semper's cross-motion for summary judgment is affirmed.

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge