CONCURRING: GARYE L. VÁSQUEZ, Presiding Judge, and VIRGINIA C. KELLY, Judge.

296 P.3d 993

**BRIMET II, LLC, an Arizona limited liability company, Plaintiff/Appellee,**

v.

**DESTINY HOMES MARKETING, LLC, an Arizona limited liability company, Defendant/Appellant.**

**No. 1 CA–CV 11–0732.**

Court of Appeals of Arizona, Division 1, Department B.

Jan. 8, 2013.

As Amended Jan. 15, 2013.

Gust Rosenfeld, PLC, By Matthew D. Bedwell and Scott A. Malm, Phoenix, Attorneys for Plaintiff/Appellee.

Stinson Morrison Hecker, LLP, By Michael C. Manning, and James E. Holland, Jr., Sharon W. Ng, Phoenix, and Foster Graham Milstein & Calisher, LLP, By Daniel K. Calisher, and Chip G. Schoneberger, Denver, Attorneys for Defendant/Appellant.

## OPINION

OROZCO, Judge.

¶ 1 Destiny Homes Marketing, LLC (Destiny) appeals the grant of summary judgment in favor of Brimet II, LLC (Brimet). For the reasons stated below, we reverse the grant of summary judgment and remand to the trial court with instructions to enter summary judgment in favor of Destiny.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 First Horizon Home Loan Corporation (First Horizon) loaned Destiny Holdings II, LLC (the Borrower) $438,750 to purchase real property comprised of eighteen undeveloped lots (acquisition loan). The loan was secured by a blanket deed of trust on the property, which was recorded in first position. Destiny and the Borrower entered into an option contract (Option). Destiny recorded the Option (in a Memorandum of Option Agreement) in second position behind the acquisition loan.

¶ 3 First Horizon then extended a new loan to the Borrower for construction on the property (construction loan). The construction loan was also secured by a blanket deed of trust on the property which was recorded

after the Option. The first $442,296.12[1] of the construction loan was used to pay off the acquisition loan. The Borrower eventually paid First Horizon $652,500 of the construction loan.

¶4 The following year, Northern Trust, N.A. (Northern) loaned the Borrower approximately $1.5 million to refinance the construction loan (refinance loan). The refinance loan was secured by a blanket deed of trust on twelve of the original eighteen lots and was recorded after the Option. The Borrower used the refinance loan to pay off the balance of the construction loan.

¶5 The Borrower defaulted on the refinance loan. Northern foreclosed and purchased the property at a trustee's sale with a credit bid of $496,706.11. Northern filed this quiet title action seeking judicial confirmation that the trustee's sale extinguished the Option. While this lawsuit was pending, Northern sold the property to Brimet.[2] As a result, Brimet became the real party in interest to pursue the quiet title action.

¶6 Brimet moved for partial summary judgment and Destiny cross-moved for summary judgment. The trial court held that Brimet was entitled to summary judgment because "the doctrines of replacement and equitable subrogation apply here and collectively have the legal effect of wiping out Destiny's option upon Northern Trust's foreclosure of its priority lien position." Destiny timely appealed. We have jurisdiction under Arizona Revised Statutes (A.R.S.) section 12–2101.A.1 (Supp. 2011).

## DISCUSSION

### Standing

■ ¶7 Destiny maintains that Brimet does not have standing to maintain this quiet title action. Pursuant to A.R.S. § 12–1101.A. (2003), anyone having or claiming an interest in real property may bring an action to quiet title against any person claiming an adverse interest in the property.

¶8 Brimet claims that it owns the real property at issue free and clear of Destiny's Option. Destiny, however, claims that Northern's trustee's sale did not extinguish the Option. Which party is correct depends on whether Northern's lien was equitably subrogated to First Horizon's first lien in connection with the acquisition loan.

¶9 Brimet does not claim that it is entitled to equitable subrogation, only that if Northern was equitably subrogated to the acquisition loan, then it purchased the property free and clear of Destiny's Option. Because this is a defense on the merits to Destiny's lien, rather than a technical defense to avoid the lien, Brimet, as Northern's grantee, may maintain a quiet title action to determine whose lien had priority at the time of the foreclosure. *See Cosper v. Valley Bank*, 28 Ariz. 373, 374–75, 237 P. 175, 176 (1925) (holding grantee entitled to assert grantor's meritorious defense to judgment lien that lien was invalid as a matter of fact and law in quiet title action). Therefore, Brimet has standing in this quiet title action.

### Replacement and Equitable Subrogation

■ ¶10 A trial court properly grants summary judgment if the moving party is entitled to judgment as a matter of law. *Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). Whether the trial court properly applied the doctrines of replacement and equitable subrogation is a question of law which we review de novo. *See Cont'l Lighting & Contracting, Inc. v. Premier Grading & Utils., LLC*, 227 Ariz. 382, 385, ¶8, 258 P.3d 200, 203 (App.2011).

■ ¶11 Under the doctrine of replacement, "if a senior mortgage is released of record and, as part of the same transaction, is replaced with a new mortgage, the latter mortgage retains the same priority as its predecessor." Restatement (Third) of Property § 7.3(a) (1997). Replacement is not available when the terms of the new loan

---

1. This amount represents the principal and accrued interest on the acquisition loan.

2. Brimet, in turn, sold lots 10 and 16 to ME 12, LLC. ME 12, LLC was substituted in as the real party in interest as to those two lots. An order granting a stay of the litigation pending resolution of the appeal was entered as to ME 12, LLC.

change the terms of the underlying debt such that it is materially prejudicial to a junior lienholder's interest in the real property. *Cont'l Lighting*, 227 Ariz. at 387, ¶ 16, 258 P.3d at 205. Because an intervening lienholder maintains the same position it had before the replacement lender satisfied the pre-existing obligation, it suffers no prejudice. *Id.* at 388, ¶ 20, 258 P.3d at 206.

■■■ ¶ 12 The doctrine of equitable subrogation is similar to that of replacement in that a later lender can pay off the first and superior loan, allowing the later lender to be substituted into the priority position of the primary lienholder, regardless of the existence of a recorded intervening lien. *Id.* at 385, ¶ 9, 258 P.3d at 203. However, the second lender must be different than the first lender, "because, by definition, one cannot be subrogated to one's own previous deed of trust." *Id.* at ¶ 10. When the lenders are of the same identity, priorities are determined under replacement and not equitable subrogation. *Id.* at 386, ¶ 11, 258 P.3d at 204.

¶ 13 In the present case, the First Horizon construction loan that replaced the First Horizon acquisition loan had priority over the Option, in the amount of the balance owed on the senior loan, $442,296.12. *Id.* at 388, ¶ 22, 258 P.2d at 206. During the term of the construction loan, the Borrower paid $652,500 towards the balance of the loan. Thereafter, Northern refinanced the construction loan, and paid in full the balance owed under the construction loan. Northern recorded a blanket deed of trust on the property securing the refinance loan after the Option.

¶ 14 Brimet maintains that Northern's lien, filed after the Option, has priority over the Option under the doctrine of equitable subrogation. Equitable subrogation permits "a subsequent lender who supplies funds used to pay off a primary and superior encumbrance to be substituted into the priority position of the primary lienholder, despite

the recording of an intervening lien." *Id.* at 385, ¶ 9, 258 P.3d at 203 (citation omitted). To avoid prejudice to junior lienholders, however, replacement and equitable subrogation only exist up to the amount paid to release the senior lien. *Id.* at 388–89, ¶ 23, 258 P.3d at 206–07.

¶ 15 In this case, the construction loan had priority over the Option in the amount of $442,296.12, the balance owed on the acquisition loan and paid by the construction loan. The Borrower's payment of $652,500 on the construction loan to First Horizon extinguished the priority lien in the amount of $442,296.12 which was senior to the Option. After the lien was extinguished, the Option had priority followed by the lien for the balance owed under the construction loan. In other words, when Northern extended the refinance loan to the Borrower, Destiny's Option was already in first position.[3]

¶ 16 Brimet argues, under an apportionment theory, that the balance paid to release the acquisition loan of $442,296.12 should be apportioned among each of the eighteen lots in the parcel secured by the deed of trust. Under the apportionment theory, a refinancing lender could obtain priority over the Option in the amount of $24,572 per lot. Brimet further argues that each lump sum payment the Borrower made to release a lot from the construction deed of trust should be applied only to that particular lot, not to the balance owed on the construction loan in general.[4] Under Brimet's theory, despite the Borrower's payments in excess of the amount of the original senior lien, Northern would nonetheless be entitled to claim equitable subrogation in the amount of $294,864.

¶ 17 Brimet argues that *CS & W Contractors, Inc. v. Sw. Sav. & Loan Ass'n*, 180 Ariz. 167, 883 P.2d 404 (1994) mandates apportionment. In *CS & W*, our supreme court held that a contractor with a mechanics' lien on a fifty-two lot development could not assert its

---

3. Northern would have become equitably subrogated for the balance of the amount it paid to satisfy the construction loan, to the extent any intervening liens had been placed on the property after the recording of the deed of trust securing the construction loan, but no such intervening liens were recorded.

4. Lot 18 was released for the lump sum payment of $112,500; while lots 12, 17, 11, and 3, were released upon receipt of a lump sum payment of $135,000 each.

entire lien amount against four lots in which it had priority. *Id.* at 169, 883 P.2d at 406. The court further held that each lot in the development would be deemed to have benefitted equally from the contractor's improvements, for purposes of apportioning the contractor's mechanics' lien among lots in the subdivision, unless the contractor could prove that a lot was improved in a disproportionate amount. *Id.*

¶ 18 It is appropriate to apportion a mechanics' lien per lot because, by statute, the legislature intended a mechanics' lien to correspond to improvements made to the specific lot on which the lien is placed. *Id.* at 168, 883 P.2d at 405. There is no similar rationale, however, for apportioning an acquisition loan secured by a blanket deed of trust on one parcel among individual lots. To do so, contrary to the holding in *CS & W*, would allow Northern (and Brimet) "to resurrect an extinguished lien and obtain a priority to which it is not entitled." *Id.* at 169, 883 P.2d at 406.

¶ 19 The original lender, First Horizon, could have made eighteen separate loans in the amount of $24,572 each, secured by eighteen separate deeds of trust, but it did not. Instead First Horizon chose to provide one loan secured by a blanket deed of trust on the entire property. Similarly, Northern's deed of trust is a blanket deed of trust covering the entire property. Although Northern had the right to foreclose on "all or any part of the Real Property," Northern held just one trustee's sale on the entire property. Additionally, ¶ 2.5 of the construction loan agreement provides that all payments or amounts received by Lender with respect to the Loan shall be applied: (i) first, to interest, (ii) second, to late fees and (iii) last, to the unpaid principal balance of the Loan.

¶ 20 The Schedule to the Loan Agreement sets forth the payment required to obtain a lot release. It does not provide that any such payment is applied in any manner other than as is set forth in ¶ 2.5 of the loan agreement. Nor did First Horizon apportion the payments. The principal balance sheet demonstrates that each lot release payment received was a pay down of the loan in general. In accordance with ¶ 2.5 of the loan agreement, of the $652,500 the Borrower repaid under the construction loan, First Horizon applied $118,629.72 to accrued interest and fees and $533,870.28 to the principal balance.

¶ 21 In sum, the construction loan had priority over the Option under the doctrine of replacement in the amount of $442,296.12. On June 1, 2006, the Borrower paid more than that amount towards the loan balance and the priority ceased to exist. Therefore, Destiny's Option became the senior lien on the property. Northern extended its refinancing loan in July 2006. At that time, there was no lien senior to the Option under which Northern could be equitably subrogated. Destiny's Option was not extinguished when Northern foreclosed on its deed of trust and purchased the property at the trustee's sale. Therefore, Brimet did not acquire title to the property free and clear of the Option and the Option remains as a senior encumbrance on the property.

**Attorney Fees**

¶ 22 Destiny seeks an award of attorney fees under A.R.S. § 12–341.01. This was a statutory quiet title action that turned on the application of the equitable doctrines of replacement and subrogation; it did not arise out of contract. Therefore, Destiny is not entitled to an award of its attorney fees. As the successful party on appeal, Destiny is entitled to its costs upon compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

**CONCLUSION**

¶ 23 We reverse and remand to the trial court with instructions that summary judgment be entered in favor of Destiny.

CONCURRING: MAURICE PORTLEY, Presiding Judge, and RANDALL M. HOWE, Judge.