IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

BANK OF AMERICA, N.A.,
a national banking association, *Plaintiff/Appellant*,

*v.*

FELCO BUSINESS SERVICES, INC. 401(K) PROFIT SHARING PLAN,
Ira S. Feldman, Trustee; and FBS SEDONA, LLC,
an Arizona limited liability company, *Defendants/Appellees*.

No. 1 CA-CV 16-0099
FILED 8-29-2017

———————————————

Appeal from the Superior Court in Yavapai County
No. V1300CV201180303
The Honorable Jeffrey G. Paupore, Judge *Pro Tempore*

**REVERSED AND REMANDED**

———————————————

COUNSEL

Renaud Cook Drury Mesaros, PA, Phoenix
By Denise J. Wachholz, Richard H. Goldberg
*Counsel for Plaintiff/Appellant*

Favor & Wilhelmsen PLLC, Prescott
By David K. Wilhelmsen, Lance B. Payette
*Counsel for Defendants/Appellees*

## OPINION

Presiding Judge Randall M. Howe delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Judge Jon W. Thompson joined.

H O W E, Judge:

¶1        This appeal is from a declaratory action by lienholder Bank of America, N.A. ("BofA") against intervening lienholder Felco Business Services, Inc. 401(K) Profit Sharing Plan and FBS Sedona, LLC (collectively, "Felco"). After Felco foreclosed on its deed of trust and sold the subject property at a trustee's sale, BofA sued for a declaration that its deed, recorded after Felco's, was equitably subrogated to a position superior to Felco's. Felco moved for partial summary judgment, arguing that BofA waived its equitable subrogation claim by not raising it as an objection to the trustee's sale pursuant to A.R.S. § 33–811(C). Without addressing whether equitable subrogation applied, the trial court agreed with Felco, holding that BofA's equitable subrogation claim was a pre-trustee's sale defense or objection that it waived by not asserting it before the sale.

¶2        On review, we hold that an equitable subrogation claim is not a defense or objection to a trustee's sale and is therefore not waivable under A.R.S. § 33–811(C). Accordingly, we reverse the trial court's granting of partial summary judgment in Felco's favor and remand to the trial court to determine whether equitable subrogation is appropriate in this case.

### FACTS AND PROCEDURAL HISTORY

¶3        In 2007, two property owners borrowed $200,000 from Countrywide Home Loans, Inc. secured by a deed of trust ("DOT 1") to property in Sedona. This deed was recorded in February 2007. A few months later, the borrowers borrowed $1.5 million from Felco to improve their Sedona property. The borrowers secured $600,000 of this loan with a deed of trust ("DOT 2") and assignment of rents to the Sedona property. DOT 2 was recorded in June 2007.

¶4        The following year, Countrywide Home Loans' sister corporation, Countrywide Bank, offered to refinance the borrowers' $200,000 loan at a lower interest rate. The borrowers accepted the offer and borrowed $204,000 from Countrywide Bank secured by a deed of trust

("DOT 3") to the same Sedona property, which was recorded in June 2008. Although the borrowers failed to tell Countrywide Bank about DOT 2 when they refinanced their loan, DOT 3 specifically stated that it must be in the first lien position, superior to any other loans. The borrowers used $200,000 of the refinancing loan to pay off and release the original loan. The deed of release and conveyance for DOT 1 was recorded in July 2008.

¶5         In the meantime, the borrowers defaulted on their payments on the Felco loan. In February 2009, Felco issued a statement of breach and notice of trustee's sale pursuant to DOT 2 to occur in May. In connection with that notice, Felco obtained a trustee's sale guarantee that revealed DOT 3, but showed that the deed was subordinate to DOT 2. Accordingly, Felco sent two notices of the trustee's sale to Countrywide Bank, which failed to respond to the notice and did not seek to enjoin the sale.

¶6         At the May 2009 sale, FBS Sedona successfully entered a credit bid of $974,657.07 — the exact amount it calculated was owed to it under the promissory note and DOT 2. FBS Sedona promptly recorded the resulting deed later in May 2009. Thereafter, FBS Sedona leased out the property, but paid all applicable property taxes, maintenance expenses, and insurance.

¶7         At some point after the trustee's sale, BofA acquired all Countrywide entities, including Countrywide Home Loans and Countrywide Bank. In August 2009, DOT 3 was assigned to BofA as the successor in interest to Countrywide. Four months later, FBS Sedona received a letter sent on BofA's behalf inquiring about the status of its "junior Deed of Trust" after the foreclosure sale and notifying FBS Sedona that BofA was investigating the notice of foreclosure sale. After completing that investigation, BofA informed Felco that DOT 3 had seniority over DOT 2 before the trustee's sale and that the sale consequently did not extinguish the senior lien.

¶8         In May 2011, BofA sued the borrowers and Felco, seeking a declaratory judgment that DOT 3 was the senior lien and a valid and enforceable encumbrance on the Sedona property through either the doctrine of equitable subrogation or replacement mortgage. BofA also sued for any excess proceeds from the trustee's sale and asked that the trial court determine the amount of those proceeds and order that Felco distribute them to BofA.

¶9         Felco moved for partial summary judgment, arguing that the doctrine of equitable subrogation should not be applied, and therefore DOT 3, as a matter of law, was not an encumbrance on the Sedona property.

Specifically, Felco argued that the court should not apply equitable subrogation because that would prejudice it as the intervening lienholder. Felco further alleged that applying the doctrine would be inequitable because BofA failed to review the chain of title and therefore did not expressly assert that it intended DOT 3 to be subrogated to DOT 1. Finally, Felco alleged that BofA failed to notify Felco of its reliance on equitable subrogation when it recorded DOT 3 or upon receiving notice of the trustee's sale pursuant to A.R.S. § 33–811(C). According to Felco, this failure showed that BofA had never intended DOT 3 to substitute DOT 1, and that instead, BofA's reliance on the doctrine was a post-sale attempt to remedy its own negligent inaction before the trustee's sale.

¶10 The trial court granted Felco's motion for partial summary judgment. In so ordering, the trial court held that it did not need to reach whether the doctrine of equitable subrogation applied because BofA waived its right to assert it. Specifically, the trial court held that A.R.S. § 33–811(C) required BofA to assert its lien priority as a "defense or objection to the [trustee's] sale," and that its failure to enjoin the sale and assert its priority constituted waiver. Thus, the court concluded that "Felco and BofA's rights in the collateral were determined at the trustee's sale" and Felco was entitled to summary judgment as a matter of law. BofA timely appealed.

## DISCUSSION

### 1. Equitable Subrogation Is Not Waived Under A.R.S. § 33–811(C)

¶11 BofA argues that the trial court erred by granting Felco partial summary judgment because the doctrine of equitable subrogation[1] is not a

---

[1] The parties focused generally on the doctrine of equitable subrogation below. On appeal, Felco questions whether Countrywide Home Loans and Countrywide Bank should be considered the same entity, therefore requiring analysis under the doctrine of replacement mortgage instead of equitable subrogation. *See* Restatement (Third) of Property: Mortgages § 7.6 cmt. e (stating that because a lender cannot be subrogated to its own previous deed of trust, an original lender's refinancing loan is treated as a "replacement loan" instead of a subrogated one). On appeal, BofA treats the doctrines almost interchangeably and urges reversal on "replacement mortgage and/or equitable subrogation." Because the two doctrines have identical rationales and analyses, using one rubric over the

waivable defense under A.R.S. § 33–811(C). We review the trial court's ruling on a motion for summary judgment de novo. *MidFirst Bank v. Chase*, 230 Ariz. 366, 368 ¶ 6, 284 P.3d 877, 879 (App. 2012). Summary judgment should be granted only if no genuine issue as to any material fact exists and the moving party is entitled to summary judgment as a matter of law. Ariz. R. Civ. P. 56(a). We also review issues of statutory interpretation de novo. *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 500 ¶ 24, 88 P.3d 565, 570 (App. 2004). The primary goal in interpreting a statute is to find and give effect to the legislative intent. *Id.* In doing so, we look to the statute's plain language as the best indicator of that intent. *Azore, LLC v. Bassett*, 236 Ariz. 424, 427 ¶ 9, 341 P.3d 466, 469 (App. 2014). If the language is subject to only one reasonable interpretation, we apply that interpretation. *J.D. v. Hegyi*, 236 Ariz. 39, 40–41 ¶ 6, 335 P.3d 1118, 1119–20 (2014). Because the doctrine of equitable subrogation is not a defense or objection to a trustee's sale that is waivable under A.R.S. § 33–811(C), the trial court erred by granting partial summary judgment in Felco's favor.

**¶12** Equitable subrogation is "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Sourcecorp, Inc. v. Norcutt*, 229 Ariz. 270, 272 ¶ 5, 274 P.3d 1204, 1206 (2012) (adopting the approach of Restatement (Third) of Property: Mortgages § 7.6(a)). Thus, applying this doctrine allows a deed of trust to assume the same priority position of an earlier deed of trust despite intervening liens that otherwise would be senior to the later deed. *Markham*, 240 Ariz. at 364 ¶ 19, 379 P.3d at 261. As its name suggests, this is an equitable remedy and is designed to avoid the injustice of a person's receiving an unearned windfall at another's expense. *Id.* Generally, the person with an interest in property who pays off an encumbrance to protect a property interest is subrogated to the rights and limitations of the person paid. *Id.; see also* Restatement § 7.6 cmt. a; *Weitz Co. L.L.C. v. Heth*, 235 Ariz. 405, 410 ¶ 15, 333 P.3d 23, 28 (2014) ("When equitable subrogation occurs, the superior lien and attendant obligation are not discharged but are instead assigned by operation of law to the one who paid the obligation.").

**¶13** Equitable subrogation and disputes of lien priority do not fall within A.R.S. § 33–811(C)'s ambit. *See Morgan AZ Fin., L.L.C. v. Gotses*, 235 Ariz. 21, 24 ¶ 8, 326 P.3d 288, 291 (App. 2014) (stating that A.R.S. § 33–811(C)'s language "to the sale" must be strictly construed). As relevant

---

other does not matter; for convenience, we refer to equitable subrogation. *See Markham Contracting Co., Inc. v. Fed. Deposit Ins. Co.*, 240 Ariz. 360, 364 ¶ 18, 379 P.3d 257, 261 (App. 2016).

here, A.R.S. § 33–811(C) states that all trustors or other persons to whom a trustee mails a notice of trustee's sale "shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief" entered before close of business on the day before the scheduled sale date. The statute's plain language prescribes waiver only of defenses and objections to the sale itself, so a trustor who fails to enjoin a trustee's sale does not waive claims that are independent of the sale. *See id.* at ¶¶ 8–10. In other words, "a completed trustee's sale does not operate to deprive the trustor of the ability to pursue claims or defenses that are independent of the sale." *Id.* at ¶ 8.

¶14         As an equitable remedy independent of a trustee's sale, equitable subrogation is neither a defense nor objection to the sale. Whether equitable subrogation applies is independent of the trustee's sale because whether BofA holds a senior or junior lien is not determined by or contingent upon the occurrence of a trustee's sale. Although lien priority claims relate to the underlying security property sold, asserting equitable subrogation does not challenge any claims for title to the property nor the validity of the trustee's sale. Felco had the ability to proceed with the sale and ultimately conduct it even if BofA had asserted the doctrine before the trustee's sale. This is true regardless whether BofA's lien was senior or junior to Felco's. Because A.R.S. § 33–811(C)'s express language does not preclude assertions of equitable subrogation, the doctrine remained available to BofA even after the trustee's sale on Felco's DOT 2.

¶15         Felco counters that an equitable subrogation claim is dependent on a trustee's sale because "if the entitlement of [DOT 3] to the priority of [DOT 1] were not asserted before the foreclosure of [DOT 2]," the trustee's sale would extinguish DOT 3. But this misconstrues the purpose of a trustee's sale. A trustee's sale merely sells the property to satisfy a lien; it does not itself determine whether a lien is in a junior or senior position. A lien's priority is determined by factors independent of the sale, including the order in which the deeds were recorded or the application of legal doctrines such as equitable subrogation or mortgage replacement. A lienholder can foreclose on the security property and conduct a trustee's sale pursuant to the deed of trust regardless whether the lien is in a junior or senior position. A lien's priority dictates whether the lien is extinguished or remains an encumbrance on the property after the sale occurs. *See* A.R.S. § 33–811(E) (providing that any property conveyed pursuant to a trustee's sale "shall be . . . clear of all liens, claims or interests that have a priority subordinate to the deed of trust and shall be subject to all liens, claims or interests that have a priority senior to the deed of trust"). Thus, the trial court erred by concluding that BofA waived its ability to

claim its lien priority by not enjoining the trustee's sale under A.R.S. § 33–811(C).

**¶16**        Because subrogation is an equitable remedy, its application "depends upon the particular facts and circumstances of each case as it arises." *Markham*, 240 Ariz. at 364 ¶ 20, 379 P.3d at 261. Therefore, we remand to the trial court to determine whether equitable subrogation is appropriate in this case.[2] *See Weitz*, 235 Ariz. at 412 ¶ 27, 333 P.3d at 30. Among the factors that the trial court must consider are whether the loan secured by DOT 3 fully performed the obligation related to DOT 1 and whether equitable subrogation is needed to prevent Felco from becoming unjustly enriched by a promotion in lien priority. *See* Restatement § 7.6(a); *see also US Bank, N.A. v. JPMorgan Chase Bank, N.A.*, 242 Ariz. 502, 507 ¶ 16, 398 P.3d 118, 123 (App. 2017) ("Arizona has adopted the definition of subrogation set forth in Restatement § 7.6.").

## 2.  Attorneys' Fees

**¶17**        BofA and Felco each request their reasonable attorneys' fees on appeal pursuant to A.R.S. § 12–341.01. We deny the requests because neither party is successful yet.

## CONCLUSION

**¶18**        For the foregoing reasons, we reverse the trial court's awarding partial summary judgment in Felco's favor and remand for the trial court to decide whether equitable subrogation is appropriate in this case.

AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[2]        We note that if the trial court determines equitable subrogation is appropriate, any amount of DOT 3 in excess of DOT 1 would not be equitably subrogated. *See* Restatement § 7.6 cmt. e ("The payor is subrogated only to the extent that the funds disbursed are actually applied toward payment of the prior lien. There is no right of subrogation with respect to any excess funds.").