NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PIONEER TITLE AGENCY, INC., an Arizona corporation,
*Plaintiff/Appellee*,

*v.*

THERESA J. LARUE,
*Defendant/Appellant*.

No. 1 CA-CV 24-0350

FILED 05-20-2025

Appeal from the Superior Court in Yavapai County
No. P1300CV202200398
The Honorable John David Napper, Judge

**AFFIRMED**

COUNSEL

Tiffany & Bosco, P.A., Phoenix
By Robert A. Royal, Benjamin B. Bednarek
*Counsel for Defendant/Appellant*

Roberts & Carver, PLLC, Prescott
By Paul L. Roberts, Jerry Carver
*Counsel for Plaintiff/Appellee*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Judge Paul J. McMurdie joined.

---

**B R O W N**, Judge:

¶1        Theresa LaRue appeals the superior court's order granting summary judgment on Pioneer Title Agency's ("Pioneer") claim for equitable subrogation and LaRue's counterclaims for negligence, gross negligence, and breach of contract.  Because LaRue has not shown the court erred, we affirm.

## BACKGROUND

¶2        LaRue and her husband purchased a house in Bullhead City ("the Property") in 2007, and several years later they obtained a loan for $204,787, confirmed by the deed of trust they both signed as security for a promissory note.  The deed of trust listed the LaRues as the borrowers and Broker Solutions, Inc., d/b/a New American Funding ("NAF") as the lender.

¶3        LaRue's husband passed away in 2016.  In 2020, LaRue contracted to sell the Property.  Naming Pioneer as the escrow company, the purchase contract ("Contract") stated that it would be used "as escrow instructions."  The Contract further provided that Pioneer would "deliver to Buyer and Seller, upon deposit of funds, a closing protection letter from the title insurer indemnifying Buyer and Seller for any losses due to fraudulent acts or breach of escrow instructions by Escrow Company." Buyer and Seller signed Pioneer's terms and conditions of escrow ("Escrow Terms"), which instructed Pioneer to "pay charges and obligations necessary to consummate this transaction" and stated that a closing protection letter would be provided to the parties "on request" to protest from escrow money losses "due to fraud or dishonesty of the escrow agent."  The Escrow Terms stated that Buyer and Seller would indemnify Pioneer for any liabilities arising out of the Escrow Terms unless "caused by the gross negligence or willful misconduct of Escrow Agent."

¶4        As part of the escrow, LaRue signed the "Seller's Required Information," which listed the NAF loan as having an approximate unpaid

balance of $160,000. NAF separately gave Pioneer a payoff statement, listing the remaining balance for a similar amount. However, Pioneer's settlement and final closing statements neglected to subtract the mortgage balance from the transaction. Pioneer's escrow agent described these omissions as "human error." Thus, when escrow closed in early February 2021, Pioneer mistakenly wired LaRue $266,463.61, which included an overpayment equal to the remaining balance of the NAF mortgage, $163,124.36. Pioneer did not send LaRue a closing protection letter.

¶5        Several months later, Pioneer realized its mistake and tried to contact LaRue, requesting that she wire funds "to our account so we may pay off the mortgage right away." Despite multiple attempts to contact LaRue, she never responded, and Pioneer paid the outstanding balance of the NAF loan. Pioneer filed suit in June 2022, alleging LaRue unjustly received a benefit when it paid the mortgage and Pioneer was entitled to reimbursement of those funds. LaRue denied liability in her answer and raised counterclaims for negligence, gross negligence, and breach of contract.

¶6        Both parties cross-moved for summary judgment. Pioneer argued it was entitled to repayment of the funds paid to NAF based on equitable subrogation and the indemnification clause in the Escrow Terms. Addressing LaRue's counterclaims, Pioneer claimed the economic loss doctrine and the statute of limitations barred the negligence claims. As to LaRue's breach of contract counterclaim, Pioneer argued her claim fails for lack of damages because she "incurred no loss." LaRue countered that her enrichment was justified because of Pioneer's admitted error and that equitable subrogation was not applicable. She also argued that Pioneer's failure to subtract the overpayment from the sale proceeds constituted negligence, and that this (along with the failure to provide a closing protection letter) breached the terms of the escrow instructions as set forth in the Contract.

¶7        After oral argument on the competing motions, the superior court granted Pioneer's motion on LaRue's negligence claims. The court took the remaining issues under advisement and later resolved them by granting Pioneer's motion for summary judgment and denying LaRue's cross-motion for summary judgment. In its final judgment, the court awarded Pioneer $55,169 for their attorneys' fees. LaRue appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶8          LaRue argues the superior court erred because she presented several disputed issues of material facts, and Pioneer improperly relied on claims and defenses that were not included in their complaint. We review summary judgment rulings de novo, viewing the evidence in the light most favorable to the non-moving party. *Normandin v. Encanto Adventures, LLC*, 246 Ariz. 458, 460, ¶ 9 (2019). A party is entitled to summary judgment if there is no genuine dispute of material facts, and the party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a). "We will affirm summary judgment if it is correct for any reason supported by the record, even if not explicitly considered by the superior court." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 329, ¶ 14 (App. 2014).

### A.      Procedural Issues

¶9          LaRue argues that Pioneer cannot properly rely on equitable subrogation because their complaint failed to comply with Arizona Rule of Civil Procedure 8 (requiring a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). According to LaRue, the complaint did not include the "bare minimum" for Pioneer to seek relief under equitable subrogation.

¶10          In assessing the sufficiency of a complaint, Arizona uses a notice pleading standard, "the purpose of which is to 'give the opponent fair notice of the nature and basis of the claim and indicate generally the type of litigation involved.'" *Cullen v. Auto-Owners Inc. Co.*, 218 Ariz. 417, 419, ¶ 6 (2008). Though Pioneer's complaint does not use the term "equitable subrogation," the complaint alleged facts indicating that Pioneer paid LaRue's mortgage because of their mistake when handling the escrow, and that LaRue refused to repay those funds. Moreover, the record belies any notion that LaRue lacked sufficient notice of the equitable subrogation claim. She addressed the issue in her motion for summary judgment (filed the same day as Pioneer's motion) and never argued in her response to Pioneer's motion that she lacked notice of Pioneer's claim for equitable subrogation. LaRue has not shown she was prejudiced by the court's consideration of the legal theories Pioneer relied on in the summary judgment pleadings.

¶11          LaRue also contends the summary judgment rulings should be reversed because they imply a genuine dispute of material fact. According to LaRue, because the court denied LaRue's motion for summary judgment without granting Pioneer's motion on the same issue

simultaneously, it implied that a question must have existed that would preclude summary judgment. However, without any explanation of what the disputed fact question is or how it is material to the issues before us, LaRue has not shown error.

### B.    Equitable Subrogation

**¶12**        This case involves a straightforward application of equitable subrogation, a legal doctrine generally referring to "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Mosher v. Conway*, 45 Ariz. 463, 468 (1935). Arizona has adopted the Restatement (Third) of Property ("Property Restatement") § 7.6 (1997) regarding equitable subrogation. *See Sourcecorp, Inc. v. Norcutt*, 229 Ariz. 270, 273, ¶ 12 (2012). The doctrine is appropriate when "[o]ne who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment." Property Restatement § 7.6(a). As the name implies, this remedy is governed by equitable considerations and is "designed to avoid the injustice of a person's receiving an unearned windfall at another's expense." *Bank of Am., N.A. v. Felco Bus. Serv., Inc. 401(K) Profit Sharing Plan*, 243 Ariz. 150, 154, ¶ 12 (App. 2017). Courts will only grant such relief when doing so would reach an equitable result and if it is necessary to prevent an unjust enrichment. *Markham Contracting Co., Inc. v. Fed. Deposit Ins. Co.*, 240 Ariz. 360, 364, ¶ 19 (App. 2016).

**¶13**        The facts here demonstrate that equitable subrogation is an appropriate remedy. LaRue received $163,124.36, which she was never entitled to receive. Allowing her to retain the overpayment would result in an unearned windfall at Pioneer's expense. Pioneer satisfied LaRue's mortgage obligation in full, thus requiring her to provide Pioneer with appropriate restitution, which is an equitable result.

**¶14**        LaRue contends that Pioneer cannot seek restitution through equitable subrogation for two reasons. First, she points to language in the Property Restatement, which suggests that "[s]ubrogation is unavailable to a person performing the mortgage obligation to the extent that he or she was primarily responsible for it." Property Restatement § 7.6, cmt. b. According to LaRue, Pioneer was responsible for paying the mortgage's outstanding balance at closing; instead, the escrow funds were paid to LaRue. Thus, Pioneer cannot claim subrogation for a loan that would not exist if it had been properly paid at closing.

¶15 We disagree with LaRue's reading of that portion of the Restatement. This language does not bar a party from recovering under equitable subrogation just because their mistakes may have given rise to the circumstances requiring subrogation. Rather, it prevents a party from claiming subrogation "for payments upon an obligation for which he is primarily responsible because '[t]here is no unjust enrichment in paying one's own debts.'" *See Hicks v. Londre*, 125 P.3d 452, 457 (Colo. 2005) (quoting Property Restatement § 7.6, cmt. c.). LaRue was primarily responsible for the mortgage on the property. Though Pioneer had a contractual responsibility to pay off the mortgage at closing as the escrow agent, the debt was never assigned to Pioneer such that LaRue ceased to be the borrower for the debt. LaRue's assertion that she was not responsible for the mortgage because it was only in her husband's name and his social security number was used in obtaining the loan is without merit. LaRue is listed as a borrower on the deed of trust, which she signed.

¶16 LaRue also argues equitable subrogation is inappropriate because none of the factors listed in Property Restatement § 7.6(b) apply here. Subsection (b) states:

> By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:
>
> (1) in order to protect his or her interest;
>
> (2) under a legal duty to do so;
>
> (3) on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition; or
>
> (4) upon a request from the obligor or the obligor's successor to do so, if the person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

Property Restatement § 7.6(b). But the Restatement is clear that "the situations described in Subsection (b) . . . do not necessarily exhaust" the number of circumstances justifying subrogation. Property Restatement § 7.6, cmt. a. Rather, such examples "should be regarded as illustrative" and "[a]dditional situations may arise, beyond those discussed [in Subsection (b)] in which one who performs a mortgage is entitled to subrogation in

6

order to avoid unjust enrichment." *Id.* Even so, Pioneer's mortgage payment would have fallen under at least one of these examples. Pioneer had a contractual duty, under the escrow instructions, to use the purchase funds to pay off the mortgage. LaRue has not shown the court erred by granting Pioneer's summary judgment motion based on the theories of unjust enrichment and equitable subrogation. Thus, we need not address whether the indemnification clause in the Escrow Terms would also support the court's ruling.

## C. Counterclaims

¶17        LaRue also challenges the court's grant of summary judgment on her counterclaims for negligence, gross negligence, and breach of contract because she raised disputed issues of material facts.

¶18        To prove negligence, LaRue must prove "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach . . . of that standard; (3) a causal connection between the [breach] and the resulting injury; and (4) actual damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007). To demonstrate gross negligence, LaRue must also show that Pioneer acted with "gross, willful, or wanton conduct." *Armenta v. City of Casa Grande*, 205 Ariz. 367, 372, ¶ 20 (App. 2003).

¶19        LaRue's negligence claims fail because she has not established any factual or legal basis for damages. She sustained no losses from the error in the escrow transaction. To the contrary, LaRue received a windfall of $163,124.36. To maintain a negligence action, a plaintiff must prove that the defendant's conduct caused a "legally cognizable injury." *See Muscat v. Creative Innervisions LLC*, 244 Ariz. 194, 198, ¶ 11 (App. 2017); *see also Walker v. Mart*, 164 Ariz. 37, 41 (1990) (recognizing there "can be no tort except in the case of some individual whose interests have suffered." (internal quotation and citation omitted)). LaRue's damage calculation reflects the same sum by which she was unjustly enriched, an amount in which she had no legitimate interest in retaining. Repaying a sum received through unjust enrichment is not a legally cognizable injury giving rise to damages.

¶20        Summary judgment is also proper on LaRue's breach of contract claim. To prove a breach of contract, LaRue must show "the existence of the contract, its breach and the resulting damages." *Graham v. Asbury*, 112 Ariz. 184, 185 (1975). Even assuming Pioneer breached the terms of the escrow instructions in failing to pay off the mortgage, its conduct enriched LaRue.

¶21　　　　Finally, LaRue asserts that Pioneer damaged her by failing to provide her with a closing protection letter.　The parties disagree about which "instructions" govern their relationship.　LaRue relies on the Contract, which states that the escrow company "shall deliver to Buyer and Seller . . . a closing protection letter from the title insurer indemnifying Buyer and Seller for any losses due to fraudulent acts or breach of escrow instructions by [Pioneer]."　Pioneer contends the Contract is an agreement only between Buyer and Seller, and that the specific instruction provided in the Escrow Terms governs, which says that a closing protection letter will be offered "on request" and will protect the recipient for "the loss of escrow monies due to fraud or dishonesty of the escrow agent."

¶22　　　　Even assuming LaRue is correct about which agreement controls, the closing protection letter would not have allowed her to keep the overpayment.　Under the Contract, the letter would protect her from any *losses* due to the breach of escrow instructions.　As explained, Pioneer's conduct did not cause LaRue any loss; it gave her a windfall.　Given that LaRue has not shown the existence of any disputed material fact on whether she was damaged, her breach of contract claim fails as a matter of law.

## CONCLUSION

¶23　　　　We affirm the superior court's grant of summary judgment. Both parties requested fees under A.R.S. § 12-341.01(A).　As the successful party on appeal, we award Pioneer its reasonable attorneys' fees and costs subject to compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court

**FILED**:　　　　JR

8